14244

LATTA v. SOVEREIGN CAMP, W. O. W.

(184 S. E., 157)

*Mr. John D. Nock,* for appellant,

*Mr. R. E. Hanna,* for respondent,

March 2, 1936.

The opinion of the Court was delivered by Mr. Justice Carter.

This action by the plaintiff, A. L. Latta, against the defendant, Sovereign Camp, Woodmen of the World, was commenced in the Court of Common Pleas for Chesterfield County, January, 1933. In his complaint the plaintiff sets up two causes of action. In the first cause of action he alleges the fraudulent cancellation by the defendant of a policy for $2,000.00, issued by the defendant on the life of the plaintiff, June 25, 1929; and in the second cause of action he alleges the wrongful retention of premiums and re-

fusal to allow plaintiff the cash surrender value of the policy. Actual damages, in the sum of $2,000.00, and punitive damages, in the sum of $500.00, are asked for. In answering the complaint the defendant denies all liability thereunder and alleges that the policy in question was forfeited for nonpayment of premiums, alleging further that the policy in question could be reinstated only upon plaintiff furnishing evidence of insurability, which the plaintiff was unable to do. Defendant further alleges in its answer: "That by the terms of the policy there were no cash surrender values, paid up insurance or extended insurance, until thirty-six monthly payments had been made thereon, and that plaintiff had not made the required number of payments prior to his premium default." The answer of the defendant also denies "wrongful cancellation of the policy or retention of premiums and alleged that defendant had acted only in accordance with its constitution, by-laws and the certificate of insurance."

The case was tried at the July, 1931, term of said Court before his Honor, Judge E. C. Dennis, and a jury, and resulted in a verdict for the plaintiff in the sum of $2,000.00 actual damages, and $500.00 punitive damages.

Motion by the defendant for a new trial being refused by the trial Judge, upon judgment entered on the verdict, the defendant has appealed to this Court.

The allegations of error imputed to the trial Judge by the defendant are set forth under ten exceptions but, in the appellant's brief, filed with this Court, counsel for appellant states that there are only three questions involved in the appeal, namely:

"1. The plaintiff admittedly being in default so as to suspend the policy under the terms and conditions of the policy, constitution and by-laws of the association, was there a breach of contract by defendant?

"2. Was there sufficient evidence of a fraud to support a verdict for punitive damages?

"3. Was there proof of actual damages, and was the verdict excessive?"

As to Question No. 1, we deem it sufficient to state that, in our opinion, considering the testimony as a whole, this Court cannot hold, as a matter of law, that the plaintiff was in default, so as to give to the defendant the right to cancel the policy in question. Under our view of the record, more than one reasonable inference can be drawn from the testimony bearing on this question. Considering the testimony as a whole, we think it may be reasonably inferred therefrom that the defendant, through its legal agents, prevented the plaintiff from making the required payments, by refusing to accept the money which the plaintiff paid to the defendant's duly authorized agent, and that the defendant issued vouchers returning some of the money. In this connection we call attention to a letter written by the president of the defendant company, dated January 3, 1933, addressed to Mr. George M. Walters, Deputy, Woodmen of the World, Cheraw, S. C., in which he stated that the plaintiff was entitled to be reinstated. The president of the Sovereign Camp, Woodmen of the World, is presumed to have understood all of the rules and requirements governing the policy in question, and it was proper for the jury to consider the letter in connection with the other testimony offered, bearing on the question. We think his Honor, the trial Judge, properly refused the motion for direction of a verdict and was right in submitting to the jury the question involved.

As to the second question, "Was there sufficient evidence of a fraud to support a verdict for punitive damages?" we think there was some evidence tending to support this alleged fact. There was testimony tending to show that the defendant intentionally devised a plan to cancel the policy in question. It was, therefore, proper to submit to the jury the question as to punitive damages. In this connection we quote the following testimony bearing on this question:

"Q. In response to that meeting between Mr. Walters and Mr. Bradshaw in Columbia, what happened to you in Cheraw; did somebody come to see you? A. Yes, but I don't remember his name.

"Q. But he was from the Woodmen of the World? A. Yes.

"Q. State whether or not you had a visit from him. A. I had a visit in Mr. R. E. Hanna's office in Cheraw by an official of the Woodmen of the World.

"Q. What did this official state to you? A. We had this meeting, and he was very sorry that this had happened and he came there thinking that he could straighten it up in some way, but he went on to state that it was customary, after insurance companies found out that they had a bad risk, to ease him out in some way. He had several forms, which he explained, and that I had to get one of those forms. That was the impression I got from him.

"Mr. Nock: I move to strike out the impression.

"Q. State what he stated to you as insurability.

"Mr. Nock: I object to this until the identity of this person is fixed, in view of the strict provisions of waiver.

"The Court: You don't know his name?

"Mr. Hanna: We made a record of it, but haven't got it here. He came in response to this meeting between Mr. George Walters and Mr. Bradshaw, in Columbia.

"The Court: I will let him go ahead and say what the man said; but not the impression of what he said.

"A. This official stated that all the insurance companies, when they found out they had a bad risk, would go to every part of the policy purposely to cancel this insurance, and that one method they had was to write this fellow to know if he wanted free·medical examination and, if so, to give them a specimen of his urine, and if they found he was in bad shape they would find some plan to cancel it; and that they would send out a blank asking if you wanted additional insurance without medical examination just to sign the dot-

ted line, as I did, and if they found out I was physically unable to get insurance they would cancel the policy.

*"Cross-Examination*

"By Mr. Nock:

"Q. Mr. Latta, do you remember the date on which you made payment of your November, 1931, dues? A. No, Mr. Huey's books will show it, I suppose.

"Q. In response to this letter of January 25, 1933, that has been read you were offered reinstatement if you would pay your unpaid premiums, and you made no offer to them to pay those premiums in any way, did you? A. Yes.

"Q. In what form? A. That question, asking them if they would loan me the money to pay the premiums, and they wrote me that I had no policy.

"Q. They wrote you that it had no loan value? A. That is correct; that it had lapsed.

"Q. And you didn't get it from any other source, did you? A. No.

"Q. And you do not want to reinstate it now? A. I am not able to do it now; it costs too much now."

This testimony, considered in connection with the other testimony in the case, in our opinion, tends to support respondent's position that there was sufficient evidence of fraud to support a verdict for punitive damages.

The following is the third question presented by the appellant: "Was there proof of actual damages and was the verdict excessive?" This question is based on Exceptions 4 and 10, reading as follows:

"4. That the Court erred in refusing the defendant's motion for a directed verdict because there was no proof of actual damages sustained by the plaintiff."

"10. That the Court erred in refusing the defendant's motion for a new trial on the grounds that the verdict was excessive, the error being that there was no legally sufficient evidence to support the finding of $2,000.00 actual damages."

We think the evidence amply sufficient to support a verdict for actual damages, and therefore think that his Honor, the trial Judge, properly submitted that issue to the jury. However, in our opinion, the evidence is not sufficient to support a verdict for actual damages in the sum of $2,000.00, the amount found by the jury. The rule governing the case as to actual damages is stated in the case of *Pack v. Metropolitan Life Insurance Company* (S. C.), 182 S. E., 747. By reference to the opinion in that case, it will be seen that the measure of actual damages in such case is the sum of the premiums which have been paid by the insured, and loss by the lapse or cancellation of the policy in question, and the damages the plaintiff has sustained by such lapse or cancellation, by ascertaining the insured's life expectancy and the amount he would be required to pay for insurance of like character during such period. But, as held in the *Pack case,* the amount which the plaintiff is now entitled to recover could not be equal to the amount of the lapsed or cancelled policy. We may add, however, that the jury may take into consideration any special damages established in the matter by the plaintiff and in this connection may take into consideration the fact, if it be a fact, that the plaintiff is not now in a physical condition to procure additional or other insurance, and is not likely to be in a physical condition to procure additional or other insurance. It is proper for the jury to ascertain these values. Therefore, the case will have to be reversed and remanded for a new trial. In this connection we may state that we also think it proper for the jury that passes upon the question of actual damages to also pass upon the question of punitive damages.

It is, therefore, the judgment of this Court that the judgment of the lower Court be, and the same is hereby, reversed, and the case remanded for a new trial in accordance with the views herein expressed.

Mr. Chief Justice Stabler and Mr. Acting Associate Justice G. B. Greene concur.

Mr. Justice Bonham and Mr. Acting Associate Justice William H. Grimball dissent.

Mr. Acting Associate Justice William H. Grimball (dissenting):

This is an appeal of Sovereign Camp, Woodmen of the World, from a judgment entered against it on a jury verdict in favor of A. L. Latta in the sum of $2,000.00 actual damages and also $500.00 punitive damages.

The complaint states a cause of action for the alleged fraudulent breach of a contract of insurance. This contract between these parties consisted of the certificate of insurance together with the constitution, laws, and by-laws of the fraternal beneficiary association known as the Woodmen of the World, and was dated the 19th day of June, 1929.

Under the terms of the contract appellant herein agreed that upon the death of A. L. Latta while in good standing as a member of the Woodmen of the World it would pay the sum of $2,000.00 to his wife, Violet Hook Latta.

Respondent agreed to pay a premium of $4.30 for the month of June, 1929, and also a like amount on or before the last day of each month thereafter, except as provided in certain "nonforfeiture options."

The portions of the constitution and by-laws pertinent to the issues in this cause are as follows:

"If the admission fees, dues and Sovereign Camp fund assessments levied against the person named in the certificate are not paid to the financial secretary of his camp as required by the Constitution and Laws of this Association, the certificate shall be null and void, and all monies paid on account of such membership shall be retained by the Association as the liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension.

"In order to accumulate and maintain funds for the payment of the benefits stipulated in beneficiary certificates held by the members of this Association, as and when such bene-

fits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Association, every member of this Association shall pay to the financial secretary of his camp one annual assessment each year or one monthly installment of assessment each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such camp dues as may be required by the By-Laws of his camp.

"If he fails to make any such payments on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension.

"Such person, if in good health, may thereafter make a new contract with the Association, upon the same terms and conditions, by complying strictly with the provisions of these laws. * * *

"Any member who becomes suspended because of the nonpayment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member and to contract that such assessments when so paid after he has become suspended for non-payment of assessments shall be received

and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

"No officer, employee or agent of the Sovereign Camp, or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these Laws, nor shall any custom on the part of any Camp or any number of Camps—with or without the knowledge of any officer of the Association have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the Constitution and Laws, then in force or thereafter enacted, nor shall the knowledge or act of any officer or employee of this Association constitute a waiver of the provisions of these laws by the Association or an estoppel of this Association.

"The Constitution and Laws of the Association now in force, or which may hereafter be enacted, the application and beneficiary certificate of membership shall constitute the contract between this Association and the member."

The contract between the parties to this cause, which as above stated was entered into by the parties on the 19th day of June, 1929, also provided as follows:

"After thirty-six monthly payments on this certificate shall have been made, should the member fail to pay any subsequent monthly payment, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender

of this certificate, may select one of the following non-forfeiture options:

"Option (a). The Cash Surrender Value set forth in column 1 of Table A  *  *  *  hereof for the period to the end of which premiums have been paid in full.

"Option (b). A paid-up Certificate for the amount set forth in Column 2 of Table A  *  *  *  hereof for the period to the end of which premiums have been paid in full.

"Option (c). Extended insurance from such due date, for the amount of the death benefit on page 1 hereof, but without Total and Permanent Disability Benefits, for the period specified in Column 3 of Table A  *  *  *  hereof for the period to the end of which premiums have been paid in full.

"After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the nonforfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five percent per annum, and any other indebtedness hereon to the Association, equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision the member may resume payment of monthly payments without furnishing evidence of insurability.  *  *  *

"After thirty-six full monthly payments have been made to it, the Association will make a loan to the member, upon the sole security of this certificate, not to exceed the amount

set forth in Column 1 of Table A * * * hereof for the period to the end of which premiums have been paid in full, with interest at the rate of not to exceed six percent per annum, payable annually in advance. The loan may be repaid in whole or in part at any time."

That portion of Table A pertinent to the issues involved in this cause is as follows:

| End of year | Column 1 Cash Value or Loan Value | Column 2 Paid-Up Insurance | Column 3 Extended Insurance Years | Days |
|---|---|---|---|---|
| 3rd | $23.17 | $ 63.00 | 2 | 187 |
| 4th | 36.42 | 96.00 | 3 | 335 |
| 5th | 50.12 | 130.00 | 5 | 116 |
| 6th | 64.29 | 163.00 | 6 | 243 |

"The values given in Columns 1 and 2 are for a certificate having a face value of $1000.00. As this certificate is for $2000.00 the values given in the designated columns will be two times the amounts written therein. The extended insurance values given in Column 3 apply to this certificate without change, but subject to the conditions stated therein.

"In the actual application of the values printed in this table, consideration will be given to that portion of the year's monthly payments paid over and above the full number of years indicated."

The contract between the parties also provided: "The non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of June, 1925."

The record shows that the thirty-first payment of monthly dues and assessment, amounting to $4.30, was not paid by member Latta during the month of November, 1931, when it was due under the terms of the contract and agreement between the parties. It was not paid until December 12, 1931. The clerk of the local camp, to whom payments were made, reported Mr. Latta to appellant on December 10, 1931, as being suspended.

Mr. Latta paid the December, 1931, dues and assessment on December 30, 1931, and on January 5, 1932, the clerk of the local camp sent to appellant the sum of $8.60 covering payments by Mr. Latta for November and December, 1931. On March 10, 1932, these two payments were returned by appellant to the clerk of the local camp, were tendered by him to Mr. Latta, and were refused by Mr. Latta.

Mr. Latta then paid to the local clerk his dues and assessments for the months of January, February, March, and April, 1932. On April, 25, 1932, appellant returned to the clerk of the local camp the sum of $17.20 covering payments for these four months. The clerk tendered these payments to Mr. Latta, who refused to accept them.

No further payments of dues and assessments were made by Mr. Latta.

On June 10, 1932, appellant returned to Mr. Latta these payments with the following letter:

"We are returning with this letter our refunding checks number 20665 for $17.20 and 20384 for $8.60, payable to yourself.

"We are very sorry but we cannot accept these remittances as you have failed to furnish evidence of insurability as requested.

"We have directed the financial secretary of your camp to return to you any other remittances received since your suspension, and wish to advise that we will not accept any further remittance from you unless you furnish evidence of insurability acceptable to our Medical Director, as previously requested."

On June 16, 1932, Mr. Latta returned these checks to appellant.

On June 22, 1932, appellant returned the checks to Mr. Latta with the following letter:

"We are in receipt of your communication of the 16th inst. in which you return checks B2-284 dated March 8, 1932, amount $8.60; and B2-665, dated April 23, 1932, amount $17.20.

"We are returning the checks with this letter and are also sending another health certificate.

"According to our records you were suspended for the nonpayment of the November Installment No. 11, 1931. If your payment for November was in the hands of the Financial Secretary of your Camp by November 30, and all subsequent Installments have been in the hands of your Financial Secretary by the last day of the month in which the Installments become due, you should not have become suspended, and we will be glad to have you send your evidence of these payments to this office for our inspection.

"You need feel no hesitancy in doing so, as photostatic copies will be promptly made when the evidence is received and the originals will be returned to you. On the other hand, if our records are correct and you were late in making your November payment, you are not eligible to again become a member without furnishing evidence of insurability, as our Laws are such that anyone who permits himself to become suspended at any time must be an insurable risk before payment can be accepted.

"We hope you will give the matter of furnishing health certificate immediate attention, as we feel sure you are anxious to have your certificate placed in force."

On January 3, 1933, appellant's president wrote the following letter to the deputy of the Woodmen of the World at Cheraw, S. C., and the contents of this letter were made known to Mr. Latta:

"Owing to the large volume of corespondence incident to my assumption of the duties of the presidency of this Association I have just now reached your letter of December 16th relative to Sovereign Albert L. Latta, a member of Camp No. 227 located at Cheraw, South Carolina.

"Upon reading the file in this case I am of the opinion that Sovereign Latta should be reinstated as a member of this Association. Our records show that he was suspended December 1, 1931, for the non-payment of installment No. 11 for the year 1931. Accordingly, if Mr. Latta will for-

ward by special remittance through the Clerk of his camp the amount which he is in arrears for the period comprising installment No. 11, 1931, to installment No. 12, 1932, he will be reinstated as a member of this Association.

'Regretting the inconvenience caused to yourself and Mr. Latta, and the other Sovereigns of Camp No. 227 by this unfortunate occurrence, I am,

"Truly and fraternally yours,

"D. E. BRADSHAW, *President.*"

On January 25, 1933, appellant wrote to Mr. Latta as follows:

"Your letter of January 16th relative to again becoming a member of this Association has just been brought to my attention.

"This Association has not received a notice of any suit filed by yourself against the Association, consequently, when my letter of January 3rd. was written I had no notice of such suit or intended suit.

"An investigation of your case shows that your certificate was lapsed December 1st, 1931 for the non-payment of installment No. 11 in the year 1931. Accordingly, under the provisions of the Constitution and Laws of this Association you are no longer a member thereof, and your certificate at the present time is null and void and of no effect.

"Please note that I am returning herewith the certificate of membership which you formerly carried in this Association, this certificate being No. RW884146L.

"I regret to inform you that this certificate, under its terms and conditions, was not eligible for a loan as of the date you ceased to be a member of this Association. Neither is the certificate eligible for a loan at this time, because it is null and void and of no effect for the reasons as heretofore set forth in this letter."

The record shows that during the period of time commencing November, 1931—the month in which Latta failed to pay his dues and assessment, resulting in the suspension

of his insurance contract—he has been in poor health, and has not been able to furnish a satisfactory medical certificate.

Mr. Latta commenced this suit against appellant on January 30, 1933, asking for actual and punitive damages in the sum of $2,500.00 for the fraudulent breach of its contract with him.

Issues being joined, the cause came on for trial in July, 1934, before Hon. E. C. Dennis, Circuit Judge, and a jury. Counsel for appellant, at the proper time, made motions for an order of nonsuit, and for a directed verdict; both of which motions were refused. The jury returned a verdict for $2,000.00 as actual damages and also for $500.00 for punitive damages. Counsel for appellant then made a motion for a new trial, which motion was also refused.

The motion for directed verdict was upon the following grounds:

1. That this is an action sounding in tort for the fraudulent breach of a contract, and no act of fraud has been shown.

2. That there could be no damage for wrongful cancellation of the policy, because the policy itself, the by-laws, and constitution of the society show that the member was suspended in accordance with the rules of the organization, by which he was bound; and, also, though his policy had been properly cancelled, the company offered to reinstate it, which offer was declined.

3. In any event, he could only recover such damages as he sustained between the date of cancellation and the offer to reinstate it, and there has been no proof of any such damage.

4. Because no damages at all have been shown.

On appeal to this Court appellant's counsel states the questions involved as follows:

1. The plaintiff admittedly being in default so as to suspend the policy under the terms and conditions of the pol-

icy constitution, and by-laws of the association, was there a breach of contract by defendant?

2. Was there sufficient evidence of a fraud to support a verdict for punitive damages?

3. Was there proof of actual damages, and was the verdict excessive?

At the outset of our consideration of the record in this cause, it seems impossible to justify an award to Mr. Latta of actual damages in the sum of $2,000.00 This was the amount of money fixed in the contract to be paid to Mr. Latta's wife, the beneficiary, upon proof of the death of Mr. Latta. If it be granted for the sake of argument that Mr. Latta's contention be true, and that the policy of insurance dated back to 1925 instead of the date of its execution in June 1929, so that, as claimed by him, there had been some six years of dues and assessments paid by him on this contract, the most that he could possibly claim in the way of actual damages to himself upon a wrongful cancellation of the policy would be the cash value fixed in Table A of the contract for the end of the sixth year, amounting to $128.58.

"Our contention is," said Mr. Latta's counsel to the trial Judge, "that six years after 1925, which was 1931, there was a paid-up cash value on this policy of a hundred and twenty-eight dollars ($128.00)."

However, it seems to me that the motion for directed verdict in appellant's favor should have been granted.

Contracts of insurance are voluntarily entered into by the parties—the insurer and the insured. There is no rule of law requiring an individual to enter into such a contract. There is no rule of law requiring an insurance organization to issue its policy of insurance to an individual. They both enter into such a contract of their own free will and accord. And all of the terms, conditions, and provisions of such a contract are equally binding upon both the insured and the insurer. Each has an equal right under the law to

insist that the other carry out all of its terms, conditions, and provisions.

In this contract now before the Court, Mr. Latta agreed to make monthly payments of dues and assessments during each calendar month. This he failed to do. And, under the terms of the contract the insurer, as it had a right to do, canceled the contract. Mr. Latta could have then had the contract revived upon the payment of all past due assessments and upon the furnishing of a satisfactory certificate of insurability. This Mr. Latta failed to do. He paid some assessments, but could not furnish such certificate of insurability. The insurer then tendered back to Mr. Latta the assessments paid by him after the cancellation of the contract, which tender Mr. Latta refused.

The insurer finally offered to reinstate the policy of insurance if Mr. Latta would pay all of the assessments due since the cancellation and without insisting upon the condition as to the furnishing the certificate of insurability. This offer Mr. Latta also declined, and he then commenced this suit in which he charges a fraudulent cancellation of his contract.

Mr. Latta insists that he was entitled to a loan under the provisions of the policy, which loan could have been applied to the payment of past due assessments. He bases this contention on the provision in the contract that "the non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of June, 1925."

However, in my opinion, this contention is without merit. The contract was entered into between the parties on June 19, 1929. It had no loan value whatever under its terms until "thirty-six monthly payments on this certificate shall have been made." It is the clear meaning of the contract that after thirty-six monthly payments on this certificate should have been made by Mr. Latta, he would then, and not before then, have been entitled to a loan under the valuations set forth in Table A. After making thirty-six monthly payments, commencing with the payment for June, 1929, the

date of the contract, the nonforfeiture values set forth in Table A were to have been computed as if the contract had been entered into on June 1, 1925.

Mr. Latta did not make thirty-six monthly payments after June, 1929, and was therefore not entitled to a loan under the provisions of the contract.

In my opinion the judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the defendant under Rule 27.

MR. JUSTICE BONHAM concurs.