17044

BENJAMIN H. DAVIS, Respondent, v. BANKERS LIFE and CASUALTY COMPANY, Appellant

(88 S. E. (2d) 658)

*Messrs. Moore & Mouzon,* of Charleston, and *Williams & Henry,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

July 28, 1955.

TAYLOR, Justice.

This appeal arises out of an action brought in the Greenville County Court for the wrongful cancellation of an insurance contract.

Timely motions were made for nonsuit and directed verdict but overruled and the case submitted to the jury who found for plaintiff $12.00 actual damages and $1,500.00 punitive damages. Thereafter, motions for Judgment *Non Obstante Veredicto* or for a new trial in the alternative were made and overruled.

On April 1, 1952, appellant issued its hospital and sick benefits policy to respondent. On the 14th of July, 1953, respondent received from appellant's home office a written notice stating that the policy had lapsed and instructing him to destroy his policy, that it was worthless; and in order that he not have a false sense of security, the policy should be destroyed, or to apply for reinstatement and pay the current premium due.

Approximately two weeks thereafter, respondent received another such notice, and having previously checked with his bank and ascertained that the check which he had sent to pay the premium had been cashed by appellant, he undertook to contact appellant's local agent through whom he had purchased the policy but was unsuccessful; and the action out of which this appeal arises was brought for the wrongful, fraudulent, and unlawful lapsing and canceling of the said policy.

Appellant contends that the lapse notices were sent by mistake and had no effect upon the legal status of the policy; that the premium had been paid and the policy was still in force and effect. Therefore, respondent was not in position to maintain an action for its wrongful cancellation and cites the following cases as authority for its position: *Cunningham v. Independence Insurance Company,* 182 S. C. 520, 189 S. E. 800; *Hollings v. Bankers Union of the World,* 63 S. C. 192, 41 S. E. 90; *Herndon v. Continental Casualty Co.,* 144 S. C. 448, 142 S. E. 648; *Kelly v. Guaranty Fire Ins. Co.,* 176 S. C. 275, 180 S. E. 35; *Moore v. Standard Mutual Life Ass'n of South Carolina,* 191 S. C. 196, 4 S. E. (2d) 251; and *Bailey v. North Carolina Mutual Life Ins. Co.,* 173 S. C. 131, 175 S. E. 73.

It is admitted by appellant that the records of the local office showed that the policy was paid up until September 1, 1953, with thirty days grace; that the lapse notices, which is the procedure followed by it when policies are declared lapsed, were sent from the home office; and that the contents were expected to be believed and acted upon accordingly by the policyholder. One of appellant's agents testified that he had talked with respondent on a number of occasions and that he could not give him extended coverage because of his age.

Respondent was unable to locate the agent from whom he purchased the policy and appellant was unable to shed any light upon his whereabouts and offered no reason for the lapse notices being sent to respondent except to say that it was a mistake and even this was not evidence but a conclusion on the part of those at the local office; therefore, there is no direct explanation for appellant's action. However, one of appellant's agents testified that he had had barber work done at respondent's place of business and on a number of occasions had discussed insurance with him and had told him that he was ineligible for extended coverage because of his age. Respondent testified that he was in bad health back in August and doing little work prior to his receipt of the cancellation notices and that it was during this period that appellant's agent had been discussing the question of insurance with him from time to time while having his barber work done. From this testimony, the jury might have reasoned that appellant knowing respondent's state of health through its agent sent the cancellation notices with the intention of avoiding payment of any claims arising out of the illness.

In the recent case of *McLaughlin v. Brotherhood of Railroad Trainmen*, 216 S. C. 233, 57 S. E. (2d) 411, 414, this Court, quoting from *Shuler v. Equitable Life Assurance Society of United States*, 184 S. C. 485, 193 S. E. 46, states:

" 'By the weight of authority, where an insurer wrongfully cancels, repudiates, or terminates the contract of insurance, the insured may at once pursue either of three courses: (1) He may elect to treat the policy as still in force, and let the test of the validity of the cancellation or repudiation await until the policy is payable and is sued on; (2) he may sue in equity to set aside the cancellation, and to have the policy declared to be valid and in force; or (3) he may maintain an action at law to recover damages for the wrongful cancellation or repudiation'." See also 32 C. J., Sec. 461, page 1263, 45 C. J. S., Insurance, § 462. This right inures to the benefit of the insured. 107 A. L. R. 1233, and 48 A. L. R. 107.

The foregoing is also in line with the holding of this Court in *Alexander v. Durham Life Ins. Co.,* 181 S. C. 331, 187 S. E. 425. This question must therefore be resolved against the contention of appellant.

Appellant also contends that the trial Judge erred in charging the jury as follows:

"Now, under the pleadings as they stand in this case, gentlemen, the policy was in force and effect through the month of August, 1953. It is admitted by the defendant company that the policy was cancelled before termination, before August 31, 1953, while it was in force and effect it was cancelled. Well, that, gentlemen, as a matter of law, constituted a breach of the contract which would entitle the plaintiff to recover actual damages; and, according to the undisputed testimony in this case, those actual damages would be the twelve dollars paid by the plaintiff for the months of July and August, 1953."

In the third paragraph of appellant's answer, it is alleged that "by mistake it sent notice of cancellation of plaintiff's policy; that it was all an error and without wrongful intention whatsoever." It was, therefore, admitted that the cancellation notices were sent to the respondent while the policy was in force stating that the policy had lapsed and that it

was then worthless. Under the authorities heretofore cited, respondent was within his right in assuming that appellant was informed of its own acts and in considering the contract cancelled and repudiated by appellant and in bringing suit for such damages as reasonably flowed from the lapsing. Appellant having admitted that it had wrongfully sent the lapse notices and respondent having accepted their statement and proceeded accordingly, there was no error in the trial Judge ruling that as a matter of law respondent was entitled to recover actual damages and submitting to the jury the question of punitive damages.

Early in the trial Judge's charge, after commenting on respondent's right to accept appellant's statement and consider the contract cancelled, he stated: "So those facts, I think, as a matter of fact, would entitle plaintiff to punitive damages." And appellant argues in his brief that this is error, but there is no exception covering this point. However, a reading of the whole charge reveals that the remarks were made with reference to actual damages and the charge makes it clear thereabout and where so considered is not prejudicial as thereafter he charged:

"Now, before,—but presuming you should conclude there was the fraudulent intent to defraud the plaintiff in the breach or cancellation of the contract—before you could assess punitive damages, you would have to go further and be satisled there was some positive, affirmative, overt act evidencing fraud, overt act evidencing fraudulent intent accompanying the cancellation and breach before any punitive damages could be assessed in this case. There must be concurrence of the fraudulent intent, that the contract was cancelled, that it was accomplished or inspired and induced by fraud; but that alone would not suffice, you must be satisfied further, in addition to the breach, there must have been some fraudulent act accompanying the breach; some positive or affirmative act, separate and distinct from the breach. In that event, you would be entitled to assess punitive damages in this case."

We are of the opinion that all exceptions should be dismissed, that the Order appealed from should be affirmed; and it is so ordered.

Affirmed.

BAKER, C. J., and STUKES, OXNER and LEGGE, JJ., concur.