456 So.2d 259 (1984)
Troy WATKINS, Individually, Troy A. Watkins, Individually, et al.
v.
LIFE INSURANCE COMPANY OF GEORGIA, a Corporation, Thomas E. Beckham, et al.
83-360.
Supreme Court of Alabama.
July 20, 1984.
Ronald L. Davis of Roberts, Davidson, Wiggins & Davis, Tuscaloosa, for appellants.
Wilbor J. Hust, Jr. of Zeanah, Donald & Hust, Tuscaloosa, for appellees.
MADDOX, Justice.
The sole question presented is whether Alabama should now recognize that the wrongful cancellation of an insurance contract constitutes a tort for which compensatory and punitive damages are recoverable.
The trial court granted the insurer's motion for summary judgment.
*260 In 1965, Troy Watkins purchased an insurance policy from Life of Georgia. Thereafter, he paid monthly premiums to an agent who came by his home, and he also purchased additional policies on himself and on his two children. In 1981, Watkins had five different policies with Life of Georgia in force on himself, and four other policies in force on his two children. The lawsuit only involves five of these insurance policies, a $1,000 life insurance policy on himself and four policies on the children.
In 1981, Watkins discussed his insurance coverage with Dennis Painter, an agent of New Southland Insurance Company. Painter offered to increase Watkins's own coverage by $12,000 for the same monthly premium. Watkins requested a representative of New Southland Insurance Company to write a letter to Life of Georgia for him, and ask that all the insurance policies he had on himself be cancelled. This letter was dated September 1, 1981. Life of Georgia responded to Watkins's letter by informing him that the policies could not be cancelled until the proper company forms were completed. Watkins called Life of Georgia and asked that Dale Livingston and Thomas Beckham, Life of Georgia representatives, come to his home to discuss the matter. When the agents arrived, Dennis Painter was there with Watkins. The Life of Georgia agents refused to discuss anything while Painter was present, and according to testimony of Watkins, in his deposition, Beckham "got mad" and "raised his voice," then left.
Late in the afternoon, Beckham returned to the Watkins home when Watkins and his wife were alone. The evidence is conflicting regarding what occurred during this meeting.
Watkins testified, by deposition, that Beckham brought the policies with him, and that he told Beckham he wanted to cancel the ones on himself and keep his children's policies in force. Watkins admitted that he signed some papers, because he knew he was entitled to receive cash value on some of the policies. Watkins said that Beckham took with him the policies with the cash surrender value.
Mrs. Watkins testified that when Beckham returned, her husband asked her to get the policies, which she did. The policies were spread out on the coffee table in the living room. She remembered hearing her husband say he was keeping the policies on the children.
Beckham testified that he met at the Watkins home on September 17, 1981, that at this time, Watkins had the policies on the table, and that he told him the ones that he wished to cash out. Beckham testified that Watkins asked him to cash out three policies for cash value, which he did, and that this was all that the plaintiff wanted and he did this for him.
Life of Georgia contends that the effect of the meeting was that one policy was left in effect on Watkins, and the four policies were still in effect on the children.
Watkins claims that he signed forms which cancelled all of his policies, including Policy No. 88541706, a $1,000 life policy, that these forms were taken by the agent for Life of Georgia, but that the request to cancel Policy No. 88541706 was crossed out by someone, and that the forms had been in the possession of Life of Georgia until produced in this litigation.
Afterward, Life of Georgia agents continued to collect monthly premiums of $4.73, which Watkins claimed he thought were being applied to the children's policies. Life of Georgia contends that the $4.73 premium was applied to policy No. 88541706, and that the policies on the children lapsed because of the nonpayment of premiums. Watkins claims that he did not learn that the $4.73 was not being applied to the policies on the children until the fall of 1982, when a new agent of Life of Georgia asked about the children. Watkins contacted the company and was told that the premiums he had paid were applied to his policy and that the policies on the children had lapsed.
The company claims that Watkins continued to pay on his policy "with the knowledge *261 that he was paying it on himself." There is some evidence in Watkins's deposition which supports the company's position. On February 1, 1983, Watkins went to the office of Life of Georgia and paid $11.48 for two months' premium (he "thought it was $5.74 a month I believe I am right and that is what I paid them. And it was $4.74 a month"). He received a refund check because of his overpayment. He testified in his deposition, as follows:
"Thank you for your payment of $11.48 in the office on February 1, 1983. Two months premium, $9.46, has been applied to your policy No. 88541706. We are refunding your overage of $2.02, check # 06043614 is enclosed. This pays your policy through the month of February. We will mark your premium receipt book up to date on your next visit to the office."
On the other hand, there is evidence that at the time he made the February 1, 1983, payment he wrote to the state insurance department, as follows:
"I have enclosed a copy of the policies on my son and daughter and it shows a weekly premium of $4.64. Life of Georgia has been coming by and collecting $4.73 per month in premiums. They state that they have been applying $4.73 to policy number 88541706 on me and yet this policy, as you will notice, is one of those that was sent in for cancellation on September 1, 1981.
"Life of Georgia has made a serious mistake and now tells me it cannot be corrected.
"I have never received any notification from Life of Georgia that the four policies on my children had been cancelled or were not in force and I assumed all this time, since I told them I wanted to keep the policies on the children, that my premiums were being applied accordingly.
"I ask that as the State of Alabama Insurance Department you will take whatever action is necessary to see that Life of Georgia corrects their mistake and applies the premiums I have been paying to my children's policies as listed below:
"Jannifer L. Watkins, Policy Number 79145689
"Jannifer L. Watkins, Policy Number 79145690
"Troy A. Watkins, Policy Number 76170212
"Troy A. Watkins, Policy Number 78822028
"Your prompt action in this matter would be appreciated."
Watkins filed this suit in April 1983, alleging breach of contract, fraud, bad faith, and wantonness. Watkins alleged in his complaint the following:
"4. The Plaintiffs purchased four insurance policies, numbered 76170212; 78822028; 79145690 and 79145689 from the Defendant, Life Insurance Company of Georgia and/or `A' through `G', said policies being on Troy A. Watkins and Jannifer L. Watkins, both the children of Troy Watkins, with Troy Watkins being named the beneficiary.
"5. On or about September 1, 1981, Troy Watkins authorized the Defendants Life Insurance Company of Georgia and/or `A' through `G' to cancel policy numbers 81623491, 84091096; 88541706, 50011443 and 79382123, by correspondence, a copy of which is ATTACHED hereto and incorporated by reference.
"6. Subsequent to September 1, 1981, the Plaintiffs continued to make payments on policies 76170212, 78822028; 79145690 and 79145689 which they desired to remain in full force and effect.
"7. At no time did the Plaintiffs knowingly request that policies 76170212; 78822028; 79145690 and 79145689 be cancelled.
"8. Policy 76170212 was purchased in 1964 with the insured being Troy A. Watkins and the beneficiary Troy Watkins. Plaintiffs have made monthly payments on said policy for approximately 18 years with only two years remaining before said policy is paid in full.
"9. Policy 79145689 was purchased in 1968 with Jannifer L. Watkins being the *262 insured and Troy Watkins being the beneficiary. Plaintiffs have made monthly payments on said policy for approximately 14 years with only six year [sic] remaining before said policy is paid in full.
"10. In approximately October of 1982 Plaintiffs first learned that the Defendants were applying premiums being paid to one of the policies which Troy Watkins had requested be cancelled on or about September 1, 1981, rather than to the four policies they desired to keep in full force and effect, policies 76170212; 78822028; 79145690 and 79145689.
"11. At that time Plaintiffs requested that this matter be reviewed and, if in fact the monies paid by the Plaintiffs were being applied to policies other than policies 76170212; 78822028; 79145690 and 79145689 that the matter be corrected.
"12. Approximately one month later, Plaintiffs were again told that monies being paid by them were being applied to a policy that the Plaintiff had requested to be cancelled on or about September 1, 1981 and that the four policies on the children had been cancelled, i.e. policies numbered 76170212; 78822028; 79145690 and 79145689.
"13. Plaintiffs have made efforts to have the Defendants correct this error but the Defendants refused to reinstate the four policies which were wrongfully cancelled by them and further refused to apply the premiums which are being paid to these four policies.
"14. The Defendants, separately and severally, have breached the implied and expressed provisions of their contract with the Plaintiffs by wrongfully cancelling these four insurance policies and by failing to apply the insurance premiums which have been paid by the Plaintiffs to these four policies.
"15. Plaintiffs allege that the breach of the aforesaid four contracts was an intentional breach to deprive the Plaintiffs of the benefits of the aforesaid contracts for which they had been paying premiums for a number of years.
"16. In the alternative, Plaintiffs allege that the breach of the aforesaid four contracts was a mistake on the part of the Defendants, however the refusal by the Defendants to correct said mistake when it was brought to the attention of the Defendants by the Plaintiffs is an intentional act made for the express purpose of denying the Plaintiffs the benefits of the aforesaid contracts for which they have been paying insurance premiums for a number of years.
"17. Plaintiffs further allege that the Defendants, separately and severally, have breached said contracts and dealt with the Plaintiffs in the fashion alleged above in retaliation for Troy Watkins electing to cancel certain other insurance policies previously purchased from the Defendants on or about September 1, 1981."
The trial court granted summary judgment for the defendants on the fraud, bad faith, and wantonness counts. That judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P. The breach of contract claim is still pending in the trial court. Appellant Watkins recognizes that in Hamner v. Mutual of Omaha Insurance Co., 49 Ala.App. 214, 270 So.2d 87 (1972), cert. denied, 291 Ala. 781, 282 So.2d 256 (1973), the Court of Civil Appeals held that a wrongful cancellation of an insurance policy is not a tort, but he claims that Hamner was decided prior to the adoption of the tort of bad faith by this Court and should not be determinative of the legal issue presented.
Unquestionably, in Alabama, the remedy for an alleged wrongful cancellation of a policy of insurance has been in contract, not tort.
In Hartford Fire Ins. Co. v. Ollinger & Bruce Dry Dock Co., 16 Ala.App. 302, 303, 77 So. 452 (1917), the Court opined:
"In a contract to insure, where the insurer renounces his contract, and declares that he will not be bound thereby, the insured may accept the breach, terminate the contract, and sue for such damages as he has sustained, and where the breach occurs before a loss takes place, *263 and the breach is accepted by the insured, the measure of damages is the difference between the cost of the insurance obtained elsewhere and its cost under the contract, provided the insured has used due diligence in protecting himself against loss."
The contract remedy is recognized in almost all jurisdictions as being the only remedy available where an insurer wrongfully cancels, repudiates, or terminates a contract of insurance. This is consistent with the holding in Hamner, supra. Almost all courts which have been presented with the question hold that the insured may at once pursue any of three courses: (1) he may elect to consider the policy at an end and recover the just value of the policy or such measure of damages as the court in the particular jurisdiction approves; or (2) he may institute proceedings in equity to have the policy adjudged to be in force; or (3) he may tender the premiums and, if acceptance is refused, wait until the policy by its terms becomes payable and test the forfeiture in a proper action on the policy. 34 A.L.R.3d 245, 269, Remedies and Measure of Damages for Wrongful Cancellation of Life, Health and Accident Insurance.
The insured in this case argues that a few states have recognized "a need for a cause of action (for wrongful cancellation of an insurance policy) and have developed the tort of wrongful cancellation of insurance policies." He cites four South Carolina cases, a Florida case, and a California case to support his argument. Those cases are: Mack v. Life and Casualty Insurance Company of Tennessee, 171 S.C. 350, 172 S.E. 305, 306 (1934); Latta v. Sovereign Camp W.O.W. No. 14403; 179 S.C. 376, 184 S.E. 157 (1936); Brown v. United Insurance Co., 236 S.C. 39, 113 S.E.2d 26 (1960); Davis v. Bankers Life and Casualty Company, 227 S.C. 587, 88 S.E.2d 658 (1955); Spindle v. Travelers Insurance Companies, 66 Cal.App.3d 951, 136 Cal.Rptr. 404 (1977); Saltmarsh v. Detroit Automobile Inter-Insurance Exchange, 334 So.2d 862 (Fla.Dist.Ct.App.1977).
These cases from these other jurisdictions, especially those from South Carolina, would allow punitive damages for the wrongful cancellation of an insurance policy.
We are faced, then, with the question whether we should continue to follow Hamner, which followed the general rule, and which we refused to review on certiorari, or whether we should overrule Hamner, and hold that in an appropriate case, an insured could sue in tort for the wrongful cancellation of an insurance policy. The insured asks us to overrule Hamner and adopt the rule that there is an implied contract of good faith and fair dealing in every insurance contract, and that this implied contract can be breached by the wrongful cancellation of an insurance policy, just as it can be by the wrongful refusal to pay a claim. Insured cites Chavers v. National Security Fire and Casualty Co., 405 So.2d 1 (Ala.1981), and asks that the rule of Chavers be applied here. We see no reason to depart from the holding in Hamner that the contract remedy is the only remedy available where an insurer wrongfully cancels, terminates, or repudiates a contract of insurance; therefore, we hold that the trial court did not err in granting defendants' motion for summary judgment.
Some of the facts are undisputed:
(1) Watkins paid premiums only on Policy No. 88541706.
(2) Watkins received a new premium receipt book for Policy No. 88541706.
(3) Watkins paid premiums on Policy No. 88541706 for over a year and continued to pay the premiums on this policy after he discovered that the children's policies had lapsed. That policy was still in effect when suit was filed.
(4) On the form Watkins signed indicating he wished to cancel policy No. 88541706, a line had been drawn through the reference to policy No. 88541706.
(5) Watkins could neither read nor write.
(6) Some extended benefits are still available under the two whole life policies on the children, even though the basic benefits would not be payable because of the lapse.
Watkins's theory of recovery on bad faith, fraud, and wantonness could be *264 summed up basically, as follows: The insurer was notified of his desire to cancel the policies on himself and that he did cancel these policies when he signed the form, but the company intentionally and fraudulently refused to cancel policy No. 88541706, collected premiums on this policy, and allowed the policies on the children to lapse.
Even assuming we recognized a tort of bad faith cancellation of insurance, we would find that under the facts of this case there was a "debatable reason" for the insurer's actions.
Assuming we would overrule Hamner, Watkins claims that he showed at least a scintilla of evidence that the insurer was guilty of fraud. He argues, in brief:
"Life of Georgia agent, Thomas E. Beckham, represented to Mr. Watkins that the instructions Mr. Watkins had given regarding cancellation of policies were carried out. That is, Beckham gave Mr. Watkins certain forms to be signed which Beckham said would cancel only policies on Mr. Watkins, including the father's policy. Mr. Watkins has a fourth-grade education and is illiterate; therefore, he was at the mercy of Beckham and signed the papers which, he believed, cancelled only policies on himself. Mr. Watkins relied on Beckham's representations that the children's policies would remain in effect, and continued making monthly premium payments on the children's policies. Unbeknownst to Mr. Watkins, Life of Georgia intentionally applied these premiums to the father's policy, allowing the children's policies to lapse. With the subsequent cancellation of the children's policies, Mr. Watkins has been damaged by the loss of the policies, one of which was to mature in seven years and one which was to mature in two years."
In this case, even assuming that Beckham represented to Watkins that all the policies on his life would be cancelled, when, in fact, one policy was not cancelled, and even assuming that the facts as averred by Watkins constitute a misrepresentation, which was relied upon by Watkins, there is nevertheless no damage which cannot be recovered in the contract action; therefore, if Watkins can prevail on his contract action, he can be made whole.
For the same reasons, Watkins cannot recover on his wantonness count. He contends that "[a] duty of good faith and fair dealing is imposed by law on insurance companies ... and it is the omission of this duty which constitutes wantonness in this case." We disagree and hold that Watkins's contract remedies are adequate to compensate him for any loss he may have suffered because of the acts or omissions of the insurer.
The judgment is due to be affirmed.
AFFIRMED.
ALMON, EMBRY and BEATTY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I would overrule Hamner v. Mutual of Omaha Insurance Co., 49 Ala.App. 214, 270 So.2d 87 (1972); but, under the undisputed facts of this case, I would affirm the trial court's order granting the insurer's motion for summary judgment.