Bobby Jack Baker and Mildred Baker filed an action against State Farm General Insurance Company ("State Farm General"), State Farm Fire and Casualty Company ("State Farm Fire"), and Perry C. Davis. The trial court dismissed two of their claims and entered summary judgment for the defendants on each of the Bakers' five remaining claims.
Bobby Jack and Mildred Baker are married and live in Tallassee. Perry C. Davis is an insurance agent who represents both State Farm Fire and State Farm General; beginning in the mid-1970's, he sold the Bakers insurance for their house.
On February 23, 1987, the Bakers executed and closed a real estate mortgage to CBS Mortgage Company ("CBS") to refinance the existing debt on their house. The Bakers' mortgage agreement with CBS provides for an escrow fund into which the Bakers are to make monthly payments to CBS to pay for homeowner's insurance; CBS is to pay for homeowner's insurance from the escrow funds. Bruce MacPherson, an attorney, represented the Bakers at the closing, and at the closing $473 was paid on the Bakers' behalf for a 12-month policy of homeowner's insurance with State Farm Fire (the "$473 policy"). At the time of the closing, the Bakers already had a State Farm Fire homeowner's insurance policy that had gone into effect on January 18, 1987. *Page 806 
April Tillery was employed as a secretary for Davis from March 1986 to September 1987. On April 4, 1987, she filled out and signed Bobby Jack Baker's signature to a "Rewrite Application" to change the effective date of the policy from January 18, 1987, to February 23, 1987; the change reflected CBS's requirement that the effective date of the insurance policy be the same as the date of the mortgage. The rewrite application was submitted to State Farm Fire to provide the same coverage at the same premium cost. Mr. Baker testified in deposition that he understood at the closing that CBS required that the insurance policy have the same effective date as the date of the mortgage. It is disputed who told Tillery to make the change: the Bakers say they never told Tillery to make it, and the defendants contend that MacPherson or his secretary told Tillery to make the change.
On April 17, 1987, Mary Helen Hall, an underwriter for State Farm Fire and State Farm General, reviewed the rewrite application. She determined that the insurance involved in the rewrite application was an acceptable risk, preliminarily approved the application, and forwarded the application for additional processing. Because of actuarial reasons, State Farm Fire will not insure a house for less than 80 percent of its replacement cost; State Farm General provides insurance for houses that are insured at less than 80 percent of their replacement cost. Although Hall had preliminarily approved the rewrite application, the State Farm Fire computer rejected, or, as the parties say, "errored out" that application, because the requested amount of insurance, which was the same in the rewrite application as in the policy that had gone into effect on January 18, 1987, was less than 80 percent of the replacement cost. On May 5, 1987, Hall had a policy issued with State Farm General, and she wrote a memo to Davis informing him of that change. The State Farm Fire policy was canceled. The State Farm General policy cost $747 (the $747 policy) for the identical coverage that Mr. Baker had obtained from State Farm Fire for $473.
Tillery contacted Mr. Baker when she received Hall's memo. She explained to him that because his house was not insured for 80% of its replacement cost State Farm Fire would not provide insurance for his house. Tillery told Baker, in effect, that he had two options — either increase the coverage with State Farm Fire to 80% of the replacement value of his house or keep the same amount of coverage, which would be provided by State Farm General at the increased cost of $747.
In early May, Mr. Baker received a bill from State Farm General for $320.64, which, for complicated reasons, was the balance due on the difference between the $473 policy and the $747 policy. Mr. Baker telephoned Davis's office two or three days after he received that bill. He told someone in Davis's office that he had already paid for a full year's premium and that he had no intention whatever of paying any additional premium for the current year's coverage.
State Farm General also sent a premium notice for $320.64 to CBS, and CBS eventually paid State Farm General the $320.64 from the Bakers' escrow account. The insurance companies, Davis, and the Bakers continued arguing over the correct amount of the premium. Ultimately, in March 1988, Bill Lovell, an underwriting operations supervisor for State Farm Fire, decided to reinstate the original State Farm Fire policy, effective February 23, 1987, at a cost of $426.36. State Farm General refunded the excess premium.
In September 1988, the Bakers filed their original complaint, which they amended twice. By agreement of all the parties, Counts four, five, and nine of the amended complaints were dismissed. The trial court dismissed both Count seven, which alleged outrage, and Count eight, which alleged invasion of privacy. The trial court entered summary judgment for all the defendants on the remaining counts. The Bakers appeal the dismissal of counts seven and eight and the summary judgment for the defendants on the other counts.
In Count seven, the Bakers claim damages for outrage by alleging that State *Page 807 
Farm General and Davis fraudulently signed Baker's signature to the rewrite application and by arguing that that action in and of itself is utterly intolerable in a civilized society. InAmerican Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981), we recognized the tort of outrage and described the proof required for that tort:
 "[W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
394 So.2d at 365.
A motion to dismiss should be granted only when it appears on the face of the complaint that the plaintiff can prove no set of facts entitling him to relief. Alorna Coat Corp. v. Behr,408 So.2d 496 (Ala. 1981). The complaint fails to show that Baker could prove his claim for outrage, and the judgment as to Count seven is due to be affirmed. The complaint also fails to show that Baker could prove his claims in Count eight, which alleges that all the defendants invaded Baker's right to privacy by appropriating his name for a commercial use. The trial court's judgment as to count eight is likewise due to be affirmed.
The defendants contend that the remaining counts, on which the trial court entered a summary judgment for all the defendants, because they are tort actions alleging the wrongful termination of an insurance policy, are barred as a matter of law by the holding in Watkins v. Life Insurance Co. of Georgia,456 So.2d 259 (Ala. 1984). Even if Watkins held as the defendants argue, except for count 10, which we discuss presently, the Bakers do not base their claims on a wrongful termination of the $473 policy; Watkins, accordingly, is distinguishable.
In Count one, pursuant to Ala. Code 1975, § 6-5-101, the Bakers claim damages for misrepresentation by State Farm General in its sending the bill to CBS for $320.64; only State Farm General is named as a defendant in this Count.
In Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602,604-05 (Ala. 1987), we listed the elements necessary to sustain an action pursuant to § 6-5-101:
 "The elements of an actionable fraudulent representation are 1) a false representation 2) concerning a material existing fact, which was 3) relied upon by plaintiff 4) to his detriment.
". . . .
 "In order to establish a cause of action under [this] statute, the plaintiff must produce evidence of a present intent on the part of the defendant to deceive the plaintiff either by the misrepresentation of an existing material fact or by the suppression or active concealment of an existing material fact."
Although the Bakers produced evidence that State Farm General sent the bill to their escrow agent, CBS, the Bakers did not produce substantial evidence that State Farm General intended to deceive the Bakers at the time it sent the bill to CBS. Accordingly, their claim pursuant to § 6-5-101 fails, and the trial court's judgment as to Count one is due to be affirmed.
The Bakers, in Count two, make this claim pursuant to §6-5-102:
 " — the Defendants were under a duty and obligation to the Plaintiffs to communicate to them the fact that the Defendants had forged Plaintiff Bobby J. Baker's signature to an application for insurance, and submitted the forged application to the State Farm Regional Office. The defendants suppressed these facts from the Plaintiffs, to their detriment and damage." *Page 808 
In Crowder, we stated the elements necessary to sustain a cause of action under § 6-5-102:
 "The suppression of a material fact, in order to amount to fraud, must include 1) the suppression of a material fact 2) that the defendant was under a duty to communicate 3) either because of a confidential relation between the plaintiff and the defendant or because of the particular circumstances of the case. § 6-5-102, Ala. Code 1975; Chapman v. Rivers Construction Co., 284 Ala. 633, 227 So.2d 403 (1969).
 "In order to establish a cause of action under [this statute] the plaintiff must produce evidence of a present intent on the part of the defendant to deceive the plaintiff either by the misrepresentation of an existing material fact or by the suppression or active concealment of an existing material fact."
516 So.2d at 604-05.
The undisputed evidence indicates that CBS required the insurance policy to have the same effective date as the date of the mortgage; that the Bakers knew that; that the rewrite application was for the same coverage with the same company for the same premium. Nothing indicates that the defendants knew at the time they submitted the rewrite application that that application would result in a change of coverage. The Bakers completely failed to offer evidence of a present intent to deceive by any of the defendants at the time Tillery signed the application and submitted it, which is the transaction upon which they base their suppression claim. The judgment of the trial court is due to be affirmed as to Count two.
Count three alleges a claim of deceit pursuant to §§ 6-5-103
and -104. The Bakers contend that the same actions they complained of in Count two form the basis for their action in Count three: the defendants signed Bobby Jack Baker's name to the rewrite application and submitted that application to the insurance companies. Actions for deceit under §§ 6-5-103 and6-5-104 are properly based upon either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead. Again, the Bakers did not produce any evidence that any of the defendants intended to mislead them at the time of the actions made the basis of the claim. The trial court's judgment as to Count three is due to be affirmed.
The Bakers allege in Count six that State Farm General and Davis intentionally interfered with their contract with State Farm Fire. In Gross v. Lowder Realty Better Homes Gardens,494 So.2d 590 (Ala. 1986), we stated the elements of the tort of intentional interference with contractual or business relations:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference,[1] and
 "(5) Damage to the plaintiff as a result of defendant's interference."
494 So.2d at 596.
The Bakers in Count six make this allegation:
 "The intentional interference by said Defendants was that they, acting by and through their respective agents, servants and employees, fraudulently and illegally forged the signature of Plaintiff Bobby J. Baker to the April 9, 1987 application, and submitted the illegal application to the State Farm regional office in Birmingham. This application was for a policy of insurance to be issued by State Farm Fire. Instead of issuing a policy in the name of State Farm Fire, State Farm General interfered with the $473.00 policy *Page 809 
by canceling it, without justification, and then issued to the Plaintiffs the $747.00 policy with State Farm General."
The Bakers did not present substantial evidence that State Farm General through Davis, or Davis through his employee Tillery, intended to interfere with Baker's contract with State Farm Fire. To the contrary, the undisputed evidence indicates that Tillery signed and submitted the rewrite application toState Farm Fire for the same coverage at the same premium.
Nothing indicates that Tillery would have known the change to State Farm General would result from her filing that application. Furthermore, the evidence does not indicate that State Farm General "canceled" the State Farm Fire policy, as the Bakers allege. The judgment of the trial court as to Count six is due to be affirmed.
In Count 10, the Bakers allege bad faith based upon the wrongful cancellation of the $473 policy. In Watkins, we held that a wrongful cancellation of an insurance policy does not give rise to a bad faith cause of action. 456 So.2d at 263. Also, under the current law concerning the tort of bad faith, a wrongful cancellation, such as is alleged in this count, would not give rise to a bad faith cause of action, because the tort of bad faith addresses refusal to pay a claim, and in this case, the Bakers made no claim. United American Insurance Co.v. Brumley, 542 So.2d 1231 (Ala. 1989); Jones v. Alabama FarmBureau Mutual Casualty Co., 507 So.2d 396 (Ala. 1986); Chaversv. National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981). The judgment of the trial court as to Count 10 is due to be affirmed.
The trial court did not err in its ruling on any of the Bakers' claims. The judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, ADAMS and HOUSTON, JJ., concur.
[1] "[I]n the past we have listed an absence of justification . . . as one of the elements of the plaintiff's cause of action. . . . [W]e recognize . . . that it is illogical to continue to list an absence of justification as one of the elements of the plaintiff's cause of action and then place the burden on the defendant to disprove it." Century 21 Academy Realty, Inc. v.Breland, 571 So.2d 296, 298 (Ala. 1990).