Walter L. Northington and his wife, Sue, sued Alfa Mutual Insurance Company ("Alfa"), alleging intentional infliction of emotional distress (outrage) and a wrongful/bad faith failure to renew a policy of insurance. The trial court directed a verdict for Alfa on the outrage claim. The claim alleging wrongful/bad faith nonrenewal of the insurance policy went to the jury. The jury awarded the Northingtons $50,000 each in compensatory damages and $750,000 in punitive damages, for a total verdict of $850,000. Alfa then moved, in the alternative, for a judgment notwithstanding the verdict, a new trial, or a remittitur. The trial court denied Alfa's posttrial motions. Alfa appealed.
The record, in pertinent part, reveals the following: On July 21, 1986, the Northingtons purchased a homeowner's insurance policy from Alfa through its local agent, Nancy Bush. The policy contained the following provision:
 "6. Non-Renewal. We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice."
The effective date of the Northingtons' insurance policy with Alfa was July 21, 1986, and the expiration date of the policy was July 21, 1987.
Shortly after purchasing the homeowner's policy, the Northingtons asked Bush to come back to their home to discuss the insurance needs of their son, Steven, who had just purchased a mobile home. *Page 759 
The mobile home was to be set up on a parcel of land owned by the Northingtons and adjacent to their home that was insured by Alfa. Thereafter, on July 30, 1986, Steven submitted to Bush an application for a mobile home insurance policy, and the Northingtons gave Bush a check to cover the premium. The application did not reflect that the policy applied for would cover a loss due to theft of personal property from the mobile home. Likewise, the policy that Alfa issued covering the mobile home did not indicate that a premium had been paid for, or that a policy limit was applicable to, coverage for loss due to theft of personal property from the mobile home.
On February 19, 1987, after the mobile home policy had gone into effect, Steven's mobile home was burglarized, and certain items of personal property were stolen. Upon learning of the burglary, Steven informed his mother, who, in turn, contacted Alfa to report the loss. At that time, Mrs. Northington was informed that although Steven's policy did provide coverage for the physical damage done to the mobile home, no coverage existed for the stolen personal property.
Later that same day, Bush discussed the burglary with Mrs. Northington. During this discussion, Mrs. Northington told Bush that it was the Northingtons' understanding that the mobile home policy provided full coverage, including coverage for loss due to theft of personal property. Mrs. Northington then accused Bush of having misrepresented the scope of coverage available under the policy. Thereafter, on February 27, 1987, eight days following the burglary of his mobile home, Steven sued Alfa, alleging breach of contract and fraud.
Because of the role that the Northingtons had played in procuring Steven's mobile home policy and then later accusing Alfa of misrepresenting the coverage provided under the policy, Alfa, in March 1987, elected not to renew the Northingtons' homeowner's policy at its expiration on July 21, 1987. An Alfa representative testified at trial that the decision not to renew the Northingtons' policy was made because, from an underwriting standpoint, there had been a change in the risk on the Northingtons' policy due to the obvious lack of trust that had developed between the Northingtons and Alfa. On May 27, 1987, approximately 60 days before the expiration date of the Northingtons' policy, Alfa advised the Northingtons in writing of its intent not to renew their homeowner's policy. The Northingtons received the notice of nonrenewal on May 28, 1987.
Prior to the expiration date of their policy with Alfa, the Northingtons submitted a homeowner's insurance application to State Farm. State Farm issued a policy to the Northingtons on July 20, 1987. Therefore, the Northingtons had no lapse in homeowner's coverage.
The dispositive issue on appeal is whether the trial court erred in allowing the bad faith claim to go to the jury — in other words, whether an insured (the Northingtons) can sue in tort for a wrongful/bad faith cancellation, nonrenewal, termination, or other repudiation of an insurance contract.
The law in Alabama has been that the remedy for an alleged wrongful cancellation of an insurance policy is in contract, not in tort. Watkins v. Life Ins. Co. of Georgia, 456 So.2d 259
(Ala. 1984). This remedy is recognized in a majority of jurisdictions as being the only remedy available where an insurer cancels, repudiates, or terminates a contract of insurance. Watkins, supra. This Court in Watkins declined to overrule this general rule in favor of a rule that there is an "implied contract of good faith and fair dealing in every insurance contract, and that this implied contract can be breached by the wrongful cancellation of an insurance policy, just as it can be by the wrongful refusal to pay a claim."Watkins at 263. Watkins made it clear that Alabama does not recognize a tort claim for bad faith cancellation of insurance and that such an action is barred as a matter of law. See Bakerv. State Farm General Ins. Co., 585 So.2d 804 (Ala. 1991).
This Court has twice recently upheld the decision inWatkins. See Baker v. State *Page 760 Farm General Ins. Co. and Raybon v. Allstate Ins. Co.,589 So.2d 710 (Ala. 1991). Justice Kennedy, writing for the Court in Baker, held that a wrongful cancellation of an insurance policy does not give rise to a bad faith cause of action, because the tort of bad faith addresses refusal to pay a claim. Justice Kennedy stated that this was the current law concerning the tort of bad faith. Justice Shores, writing for the Court inRaybon, also reaffirmed that Watkins was the current law in this area. We note that in each of those cases the trial court had entered a summary judgment in favor of the insurer.
After a review of the record, as well as the well-written briefs of the parties, this Court, in this case, is not inclined to overrule, or create any exception to, the rule of law set out in Watkins. The action based on the tort of bad faith is an extreme remedy and is available only in extreme circumstances concerning an unexcused failure to process a claim or to pay policy benefits. Waldon v. Cotton States MutualIns. Co., 481 So.2d 340 (Ala. 1986). In line with this philosophy, and consistent with Watkins and its progeny, this Court will not extend the bad faith cause of action to apply to the facts in this case.
We hold that the trial court erred in allowing the Northingtons to prosecute and recover on a claim that this Court has repeatedly rejected as a cognizable cause of action. Its judgment is due to be reversed and a judgment rendered for the defendant.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.[1]
[1] Justice Houston did not attend oral argument, but he has listened to the tape recording of that argument.