The plaintiffs Gregory Defleron and Leslie Defleron appeal from a summary judgment entered in favor of the defendants The Gulf Agency, Inc. ("Gulf"), and certain underwriters at Lloyd's of London subscribing to Insurance Policy/Certificate No. HOL00983 (hereinafter those underwriters are referred to as "Lloyd's") on the Deflerons' claims arising out of the issuance of, and the subsequent attempted cancellation of, a policy of homeowner's insurance. We affirm in part, reverse in part, and remand.
Our standard of review of summary judgments is settled:
 "A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala.R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, Inc., 671 So.2d 674, 675
(Ala.Civ.App. 1995) (citations omitted). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v.Jefferson County, 623 So.2d 1130, 1132 (Ala. 1993). No presumption of correctness attaches to a summary judgment, and our review is de novo.Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025
(Ala.Civ.App. 1993) (citing Gossett v. Twin County Cable T.V., Inc.,594 So.2d 635 (Ala. 1992)).
In the fall of 1995, Leslie Defleron contacted Jack Nichols, an employee of the Badger-Stonewall Insurance Agency ("Badger-Stonewall"), concerning the Deflerons' homeowner's insurance. The record reveals that in November 1994, Badger-Stonewall had obtained homeowner's insurance for the Deflerons through Southern Insurance Underwriters, Inc., and that that coverage had expired on November 1, 1995. On December 14, 1995, Nichols provided Leslie Defleron a price quotation for a policy of homeowner's insurance offered by Lloyd's through Gulf. However, that price quotation was for a type of policy, designated "HO8" by Gulf and Lloyd's, that was not to be issued with respect to homes more than 50 years old.
On December 15, 1995, Nichols completed, and Leslie Defleron signed, an application form (drafted by Gulf) for Lloyd's HO8 homeowner's insurance, listing "Greg L. Defleron" as the applicant; listing 260 Dexter Avenue, Mobile, Alabama" as the mailing and dwelling address; and identifying *Page 550 
the mortgagee of the property as "Fleet Finance Inc." at "P.O. Box 6016, Springfield, Ohio." The application indicated that the property for which coverage was sought was constructed in "1906 1929" and that a $277 advance premium had been accepted by Badger-Stonewall. Gulf received the application on December 18, 1995, and initially issued a certificate of insurance for policy number HOL 00983, with a coverage term of December 15, 1995, to December 15, 1996. However, a Gulf supervisor detected that the Deflerons' home did not meet the underwriting guidelines for issuance of an HO8 homeowner's policy, and directed that the policy be canceled.
Gulf prepared a notice of cancellation, dated January 3, 1996, indicating that policy number HOL 00983 would be canceled as of 12:01 A.M. on January 15, 1996. The record contains a copy of this notice of cancellation, which bears a signed certification indicating that exact copies of the notice were mailed to the insured and the lienholder; the notice lists the address of "Greg L. Defleron" as "260 Dexter Avenue, Mobile" and Fleet Finance's address as "P.O. Box 6016, Springfield, OH." The record also contains a separate signed certification from a postal employee indicating that the cancellation notices addressed to "Greg L. Defleron" and Fleet Finance were delivered by Gulf to a post office on January 3, 1996. However, Leslie Defleron testified at her deposition that she did not receive this notice, and a Fleet Finance employee based in that company's Atlanta office testified at her deposition that there was no record in its files of its having received the cancellation notice. Gregory Defleron testified at his deposition that he could not recall having received a cancellation notice from Gulf, but also testified that he was sure that he would have communicated with Leslie Defleron, who handled insurance matters for the two of them, had he received such a notice.
At his deposition, Nichols testified that on January 18, 1996, he had sent the Deflerons a personal note apologizing for his inability to obtain insurance for them. However, he also testified that he did not keep a copy of this note, and no copy of the note appears in the record; in addition, the Deflerons denied having received any such note from Nichols.
On April 4, 1996, a burglar took several items from the Deflerons' home, and Leslie Defleron contacted Nichols by telephone to report the loss. Nichols telephoned Gregory Defleron later that day and informed him that there was no insurance to cover the loss.
The Deflerons sued Nichols, Badger-Stonewall, Gulf, and Lloyd's in the Mobile County Circuit Court. Their four-count complaint asserted, among other things, that Nichols had acted on behalf of Gulf and Lloyd's, as well as the Deflerons and Badger-Stonewall, when he allegedly represented to the Deflerons that their homeowner's insurance coverage could be placed with a "better" insurance carrier, and that the Deflerons had purchased the Lloyd's policy in reliance upon Nichols's alleged representations. In addition to this misrepresentation count, the Deflerons asserted two counts alleging that the defendants had negligently or wantonly "sold, procured, and administered" the Lloyd's homeowner's policy and one count alleging that the defendants had suppressed a material fact, i.e., that the Deflerons actually had no homeowner's coverage.
Gulf and Lloyd's filed summary-judgment motions as to all claims asserted against them. After the Deflerons had filed responses in opposition, the trial court heard argument on the motions and entered partial summary judgments in *Page 551 
favor of Gulf and Lloyd's. These judgments were later certified as final, pursuant to Rule 54(b), Ala.R.Civ.P.
The Deflerons appealed to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975. The trial court subsequently entered an order in compliance with Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229
(Ala.Civ.App. 1996), and we now address the merits of the appeal.
 I. Vicarious liability
In its six-page summary judgment, the trial court concluded that all of the Deflerons' claims were based upon the theory that Nichols acted as an agent for Gulf and Lloyd's, and that the Alabama Supreme Court's decision in Ballard v. Lee, 671 So.2d 1368 (Ala. 1995), precluded the imposition of vicarious liability upon Gulf and Lloyd's. While the trial court opined that this ground was "dispositive of all of [the Deflerons'] claims," it proceeded to conclude that the Deflerons had failed to present substantial evidence that they did not receive a cancellation notice from Gulf and Lloyd's, citing Montz v. Mead Charles, Inc.,557 So.2d 1 (Ala. 1987), and Currie v. Great Central Insurance Co.,374 So.2d 1330 (Ala. 1979).
In Ballard, the owner of a restaurant (Ballard) sought property insurance coverage for his restaurant from an insurance agency in Hamilton, Alabama. Ballard requested coverage amounting to $85,000 for the restaurant structure itself and $45,000 for the structure's contents. The insurance agency contacted a local surplus-lines insurance broker to assist it in securing coverage for Ballard, and that broker in turn contacted an overseas brokerage firm, which solicited coverage from a number of independent syndicates. When a particular syndicate ("the Syndicate") agreed to issue a policy after receiving certain documents, the overseas brokerage firm contacted the local broker, who informed the Hamilton insurance agency. An employee of that agency (Carter) told Ballard, "I have got your insurance and got you bound, if you want it. . . . It's $85,000 and $45,000." Carter also received the premium for the coverage from Ballard and assisted Ballard in obtaining a satisfactory inspection report regarding the restaurant. However, the policy that was eventually issued by the Syndicate and that was delivered by Carter to Ballard contained language limiting the Syndicate's liability to the "actual cash value" of the restaurant building and its contents.
After the restaurant was destroyed by fire, and the Syndicate had paid an amount approximately $57,000 less than the aggregate $130,000 policy limits, Ballard sued the Syndicate, alleging, among other things, that it was liable in fraud because Carter had misrepresented or suppressed material facts. The trial court entered a summary judgment in favor of the Syndicate, and Ballard appealed.
In concluding that the trial court properly entered a summary judgment as to this vicarious-liability claim, the Alabama Supreme Court explained at length the legal distinction between an insurance broker and aninsurance agent, and why the Syndicate's liability could not be predicated upon acts of Carter:
 "Ballard contends that Carter was the agent of the Syndicate, or, at least, that he concurrently represented the Syndicate and Ballard. The Syndicate denies that Carter was an agent of the Syndicate, contending that he was merely a broker representing Ballard in Ballard's search for coverage.
 "The functions and characteristics of insurance `agents' and `brokers,' respectively, are set forth in Ala. Code 1975, *Page 552 
§ 27-7-1(a). That section defines those two terms:
 "`(1) Agent. A natural person, partnership or corporation appointed by an insurer to solicit and negotiate insurance contracts on its behalf, and if authorized to do so by the insurer, to effectuate, issue and countersign such contracts. An agent may not delegate the countersignature authority by appointing another person as his attorney-in-fact, except, that this provision shall not apply to agents for direct-writing insurers.
 "`(2) Broker. A natural person, partnership or corporation who, on behalf of the insured, for compensation as an independent contractor, for commission or fee and not being an agent of the insurer, solicits, negotiates or procures insurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself or itself. Brokers cannot bind the insurer and all business produced must be countersigned by a resident agent of the insurer accepting the risk.'
 (Emphasis added.) See, also, J. Appleman, Insurance Law and Practice § 8726, at 338 (1981) (`A broker is . . . one who acts as a middleman between the insured and insurer and . . . solicits insurance from the public under no employment from any special company').
 "In this case, it is undisputed that Carter and the Syndicate shared no express contractual relationship. Indeed, Ballard concedes that liability cannot be based on the principle of respondeat superior. Brief of Appellant, at 56. After assuming the responsibility, at Ballard's request, to locate an insurer, Carter served at all relevant times as a `middleman' for the transactions between the Syndicate and Ballard. Moreover, no reasonable construction of the communications transpiring among the parties supports the proposition that Carter had either actual or apparent authority to bind the Syndicate. Thus, we are compelled to conclude that Carter's role throughout these transactions was that of a broker.
 "Ordinarily, `an insurance broker represents the insured and is not considered an agent of the insurer.' Lampkin v. Kelly, 771 S.W.2d 953, 954
(Mo.App. 1989). A broker usually acts solely as the insured's agent and `has a license to "hunt"n for a suitable policy without having any prior representation contract with any particular insurer.' M. Pock, Insurance, 45 Mercer L. Rev. 253, 255 n. 15 (1993); see, also, J. Appleman, Insurance Law and Practice § 8727 (1981). Only `special conditions or circumstances in a particular case [will] warrant the inference that a broker is the agent of the insurer.' Lampkin, 771 S.W.2d at 954. These rules are essentially codified in Ala. Code 1975, § 27-7-1(a)(2), which expresses the intent of our legislature with regard to concurrent agency, namely, that in the usual case, a broker will not be regarded as `an agent of the insurer.' Id.
 "We are aware that a broker sometimes performs certain functions that benefit the insurer, such as delivering the insurer's policy to the insured, collecting premiums from the insured, and forwarding the proceeds of the premium to the insurer and, thus, that the broker may, for some purposes, represent the insurer. Hunt v. State, 737 S.W.2d 4 (Tex.App. 1987); see, also, American Fire Ins. Co. v. King Lumber Mfg. Co., 74 Fla. 130, 77 So. 168 (1917), affirmed, 250 U.S. 2
(1919). In § 27-7-1(a)(2), however, these activities are expressly, or by clear implication, ascribed to brokers. *Page 553 
 Thus, the broad application of this rule in Alabama would render anyone who `solicits, negotiates or procures insurance or the renewal or continuance
thereof, or in any manner aids therein, for insureds or prospective insureds,' § 27-7-1(a)(2) (emphasis added) — by which activities he qualifies as a broker — ipso facto an agent of the insurer. Such a result would contravene § 27-7-1(a)(2) and would be contrary to the policy of this state as declared by the legislature. Thus, where, in a damages action alleging fraud, a defendant insurer files a properly supported summary judgment motion, suggesting that the person who allegedly defrauded the plaintiff insured was a broker — which the plaintiff contends was a dual agent — the plaintiff's rebuttal evidence must relate to activities of the broker other than those mentioned in § 27-7-1(a)(2).
 "The only evidence presented indicating Carter's activities, other than his delivering the policy and receiving the premium, related to his assisting Ballard in obtaining a satisfactory inspection report. Because insurance involves an ordinary contractual relationship, the `insurer my impose any terms and conditions consistent with public policy which it may see fit.' J. Appleman, Insurance Law and Practice § 7004, at 39 (1981). The Syndicate was entitled to require an inspection report as a condition precedent to its obligation to issue a policy, and Carter's assistance to Ballard in the procurement of a report satisfactory to the Syndicate was merely an `aid' in the procurement of coverage, as provided by § 27-7-1(a)(2). Thus, we conclude that Ballard's evidence indicating that Carter was the Syndicate's agent, on which evidence Ballard sought to base the Syndicate's principal-and-agent liability, was insufficient to defeat the Syndicate's properly supported motion as to the claim of principal-agent liability. Thus, the summary judgment is affirmed as to that claim."
671 So.2d at 1371-73.
We agree with Gulf and Lloyd's that none of the activities performed by Nichols falls outside the scope of actions within the definition of "broker" in § 27-7-1(a)(2), as interpreted by the Alabama Supreme Court in Ballard. Thus, as to the Deflerons' claim that Nichols represented to them that he could place their coverage with a "better" insurance carrier, the summary judgment is due to be affirmed.
 II. "Direct" liability
We disagree with the trial court's statement that its conclusion that Gulf and Lloyd's are not responsible for the actions of Nichols is "dispositive of all" of the claims asserted in this case. Ballard itself involved two theories of liability with respect to the Syndicate: one based upon the actions of Carter and one based upon the Syndicate's own actions in failing to disclose the amount of benefits it would pay in the event of a total loss. The Alabama Supreme Court reversed the summary judgment as to the claim of fraudulent suppression, reasoning:
 "Ballard argues that the Syndicate's insurance policy is fraudulent upon its face, because it does not disclose that the definition of `actual cash value' is the replacement cost less depreciation, and does not disclose the method by which the company would calculate the actual cash value of the property in the event of a total loss.
". . . .
 "Ballard does not claim that he had a confidential relationship with the Syndicate, nor do we find one. On the contrary, as a surplus lines insurer, the Syndicate is far removed from an individual *Page 554 
 insured, and its only link to Ballard within the web of brokers and insurance procurers between them was the written policy itself. The policy states that, until the property is replaced, the Syndicate will pay only the `actual cash value' of the property. The policy does not, however, reveal the meaning of the term `actual cash value.'
". . . .
 "The evidence establishes that the sole communication between Ballard and the Syndicate was the written replacement policy. As the Syndicate states in its brief, coverage through the non-standard, surplus lines insurance market is unusual and can be complex, and Alabama law does require that there be surplus lines brokers to act on behalf of the insured. Ala. Code 1975, § 27-10-25; § 27-7-1(a)(2). We nonetheless point out that, where a written policy is the only communication from a remote insurer, the written meaning of the policy's terms takes on a heightened significance to the insured, who must abide by them.
 "The evidence shows that the Syndicate employed the term `actual cash value' as a tool of its trade to sharply limit the benefits Ballard could receive after a total loss, without defining the `industry' term within the policy. The evidence also shows that the term `actual cash value' has an accepted everyday meaning, which would be known by a layperson, and that its meaning for purposes of a replacement policy is generally known only to those in the insurance industry. Because Ballard has thus established his suppression claim with substantial evidence concerning the relationship of the parties, the value of the fact suppressed, and the relative knowledge of each party, the claim must be presented to the jury.
 "We do not today disturb that line of cases wherein we have upheld the validity and enforceability of `actual cash loss' provisions in replacement policies. . . . We also recognize that foreign insurers who issue surplus lines policies through a system of brokers and underwriters do this for profit. We emphasize, however, that when consumers generate this profit for an insurer whose only link to them is a written policy, they are entitled to read in that policy the basic facts about the coverage they are paying for."
671 So.2d at 1373-75 (emphasis added).
In addition to pleading claims against Gulf and Lloyd's based upon Nichols's actions, the Deflerons have also pleaded a fraudulent-suppression claim; they assert that all of the defendants, including Gulf and Lloyd's, suppressed the fact that the Deflerons actually had no homeowner's coverage on April 4, 1996, when their home was burglarized. Thus, the trial court erred in concluding that Ballard
warranted the entry of a summary judgment in favor of Gulf and Lloyd's as to all of the Deflerons' claims.
The elements of a fraudulent-suppression claim are: "`(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.'" Ex parte Ford Motor Credit Co.,717 So.2d 781, 785-86 (Ala. 1997) (quoting Lambert v. Mail HandlersBenefit Plan, 682 So.2d 61, 63 (Ala. 1996)). The Deflerons contend that Gulf's issuance of a certificate of insurance indicating that their home was insured by Lloyd's for the period "12/15/95 to 12/15/96" was a statement that they would have homeowner's coverage throughout that period, and that Gulf and Lloyd's did not disclose to them that their coverage would not extend during that period, causing them not to obtain *Page 555 
other homeowner's insurance that would have covered the burglary and would have prevented them from incurring a financial loss therefrom.
In defense of the summary judgment, Gulf and Lloyd's insist that Gulf sent a notice of cancellation to Gregory Defleron on January 3, 1996, indicating that the Lloyd's policy would be canceled effective January 15, 1996, thereby communicating the allegedly suppressed fact. They contend that the evidence that the notice was prepared and mailed to Gregory Defleron required the Deflerons, in order to prevent the entry of a summary judgment, to present substantial evidence indicating that they did not receive the notice, and that the Deflerons' testimony that they did not receive a cancellation notice was not substantial evidence creating a genuine issue of material fact. Like the trial court, they rely upon Montz and Currie, as well as § 27-23-25, Ala. Code 1975, for these propositions.
However, in Ex parte Alfa Mutual General Insurance Co., 742 So.2d 182
(Ala. 1999) (rehearing overruled by further opinion on June 25, 1999), the Alabama Supreme Court recently addressed the respective burdens, at the summary-judgment stage of an action, of parties contesting whether notice of cancellation of an insurance policy was properly mailed. InAlfa, an insurer (Alfa) issued a homeowner (Spriggs) an "Evidence of Insurance Form," indicating that she had homeowner's insurance, just before she closed on a transaction to finance the purchase of her home through a bank. The home was later destroyed by fire, and Alfa denied Spriggs's claim, contending that it had rejected her insurance application after it had issued the "Evidence of Insurance Form" and that it had sent her a notice canceling her coverage. Both Spriggs and the bank, which held a lien on the home, denied receiving the notice, which denial Alfa contended was immaterial. The trial court entered a summary judgment in favor of Alfa; however, this court reversed that judgment. Spriggs v.Compass Bank, 742 So.2d 178 (Ala.Civ.App. 1997).
In affirming the judgment of this court, the Alabama Supreme Court inAlfa rejected the propositions that § 27-23-25, Ala. Code 1975, applied in the context of homeowner's insurance and that denial of receipt of a letter was insufficient to create a question of fact:
 "Section 27-23-25 appears in Title 27, Chapter 23, Article 2. That article is entitled `Cancellation of Automobile Liability Insurance.' In addition, § 27-23-20(1)b.3. (another Code section appearing in that Article 2) specifically states that `this article shall apply only to that portion of an automobile liability policy insuring against bodily injury and property damage liability and to the provisions therein, if any, relating to medical payments and uninsured motorists' [sic] coverage.' Because we are not here presented with a case involving `that portion of an automobile liability policy insuring against bodily[-]injury and property[-]damage liability,' § 27-23-25 does not apply. Cf. Security Ins. Co. of Hartford v. Smith, 360 So.2d 280 (Ala. 1978) (recognizing that the article did not cover a portion of a liability policy specifically excluded by § 27-23-20). Thus, in the absence of any other statute governing notice of cancellation of insurance or rejection of an application for insurance, the outcome of this case depends on the common-law rules regarding proof of mailing.[1]
 "Shortly before the Legislature adopted the act that has been codified at § 27-23-25 (see Act No. 407, Ala. Acts 1971, § 485.1, approved August 25, 1971), this Court had (on July 22, 1971) *Page 556 
 decided Harrell v. Alabama Farm Bureau Mut. Cas. Ins. Co., 287 Ala. 259, 251 So.2d 220 (1971); that case held that an insurer sued for breach of contract and pleading cancellation as a defense had to prove, by clear and convincing evidence, that it properly mailed the notice of cancellation. 287 Ala. at 263-64, 251 So.2d at 224. Harrell also recognized the common-law rule that `[t]he presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by the addressee.' 287 Ala. at 264, 251 So.2d at 224-25. However, the Court qualified that presumption by stating that `[e]vidence tending to show that a letter was not received raises a question for the trier of fact as to whether the letter was mailed.' Id. For that proposition, the Court cited with approval Corinth Bank Trust Co. v. Cochran, 219 Ala. 81, 121 So. 66 (1929).
 "In Cochran, this Court stated that the common-law rule is that when the addressee denies receiving a letter, the question whether the letter was mailed and received is a jury question. The Court stated:
 "`A letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render evidence of its mailing inadmissible. Neither is conclusive. Whether it was so mailed and received becomes a jury question.'
 Cochran, 219 Ala. at 83, 121 So. at 67 (emphasis added). This common-law rule is substantially different from the rule set out in § 27-23-25, which, for the policies to which it relates, limits the proof required (to show that a notice of cancellation was given by mail) to proof that the insurer properly mailed the notice `to the named insured at the address shown in the policy'; the statute makes an insured's denial of receipt irrelevant. However, the application of the common-law rule in this case leads to the same result as that reached by the Court of Civil Appeals.
 "Alfa produced evidence indicating that it properly mailed the notice of cancellation, with the proper address, and that it was not returned. However, Spriggs denied receiving the notice. Under the common-law rule, her denial created a question for the factfinder to determine. Therefore, the Court of Civil Appeals properly concluded that whether Alfa mailed its notice of rejection and whether Spriggs received that notice are questions of fact for the jury.
"____________________
 "[1] In addition, the Legislature may have deemed it wise to treat automobile liability insurance and homeowner's insurance differently."
Alfa, 742 So.2d at 186. In overruling Alfa's application for rehearing, the Alabama Supreme Court specifically addressed the effect of Montz andCurrie, the two cases cited by the trial court and relied upon by Gulf and Lloyd's in this case:
 "Alfa points out that in Montz v. Mead Charles, Inc., 557 So.2d 1 (Ala. 1987), and Currie v. Great Cent. Ins. Co., 374 So.2d 1330 (Ala. 1979), this Court affirmed judgments in favor of the insurer when the insured denied receipt of notice. Alfa argues that these cases are directly on point. However, a close reading of Montz shows that the insured did not deny receiving notice, but instead merely stated that `he [did] not recall receiving notice.' 557 So.2d at 5. That is not the same as the evidence presented here; in this case, the *Page 557 
 insured's denial of receipt of notice is buttressed by the fact that Compass Bank also denied receiving notice. In Currie, the Court affirmed a trial court's judgment after an ore tenus hearing; of course, an order based on ore tenus evidence has a standard of review entirely different from that applied on our review of a summary judgment. Therefore, this argument has no merit."
Alfa, 742 So.2d at 187-88.
Here, as in Alfa, the insurer (Lloyd's) and its agent (Gulf) have adduced evidence indicating that they mailed a notice of cancellation to Gregory Defleron. However, Leslie Defleron, who handled insurance matters for the Deflerons, denied having received any notice that the policy had been canceled, and Gregory Defleron testified that he would have communicated with her had he received a cancellation notice. Moreover, the Deflerons also adduced evidence indicating that Fleet Finance, which held a mortgage on their property, had no record of having received a notice of cancellation. We conclude that these denials, as in Alfa, "[create] a question for the factfinder to determine." 742 So.2d at 186. We therefore reverse the summary judgment with respect to the Deflerons' fraudulent-suppression claim.[1]
Finally, we note that the Deflerons do not address the correctness of the summary judgment as to their claims alleging negligent and wanton sale, procurement, and administration, except to state that these counts "were similarly viable . . . and should also be restored." However, they present no authority, as required by Rule 28(a)(5), Ala.R.App.P., in support of this statement. Because the Deflerons' argument as to these claims fails to comply with Rule 28(a)(5), which requires citation of authority supporting a litigant's position, we affirm the summary judgment in favor of Gulf and Lloyd's as to these claims. See, e.g., Hartv. Marcum, 692 So.2d 850, 851 (Ala.Civ.App. 1997); Pierce v. Helka,634 So.2d 1031, 1033 (Ala.Civ.App. 1994).
 III. Conclusion
Based upon the facts we have outlined and the authorities we have discussed, we affirm the summary judgment in favor of Gulf and Lloyd's as to all claims in the Deflerons' complaint except the fraudulent-suppression claim. As to the fraudulent-suppression claim, we reverse the summary judgment and remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates and Monroe, JJ., concur.
Crawley and Thompson, JJ., concur in part and dissent in part.
[1] Judge Crawley's dissent's insinuation that a failure to provide notice of cancellation of an insurance policy cannot legally result in damage to an insured neglects the facts (1) that Gulf and Lloyd's have, in fact, treated the Deflerons' policy as having been cancelled, and have therefore refused to pay claims made under that policy, and (2) that the Deflerons have testified to having suffered mental anguish, which would itself support an award of compensatory damages should the trier of fact find in their favor on their suppression claim. E.g., Duck Head ApparelCo. v. Hoots, 659 So.2d 897, 905-08 (Ala. 1995).