Gregory Defleron and his wife Leslie Defleron sued Gulf Agency, Inc., and certain underwriters at Lloyd's of London subscribing to Insurance Policy/Certificate No. HOL 00983. (Hereinafter those underwriters are referred to as "Lloyd's.")[1] The Deflerons appealed to this Court from a summary judgment entered in favor of Gulf and Lloyd's. We transferred the appeal to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals affirmed the judgment in part and reversed it in part, affirming "the summary judgment in favor of Gulf and Lloyd's as to all claims in the Deflerons' complaint except the fraudulent-suppression claim," as to which it reversed the summary judgment. Defleron v. Gulf Agency, Inc., 815 So.2d 548 (Ala.Civ.App. 1999). We granted Gulf and Lloyd's petitions for certiorari review. We reverse the judgment of the Court of Civil Appeals to the extent it reversed the judgment of the circuit court.
 I. Factual Background
The pertinent facts and procedural history of this case are well stated in the opinion of the Court of Civil Appeals:
 "In the fall of 1995, Leslie Defleron contacted Jack Nichols, an employee of the Badger-Stonewall Insurance Agency (`Badger-Stonewall'), concerning the Deflerons' homeowner's insurance. The record reveals that in November 1994, Badger-Stonewall had obtained homeowner's insurance for the Deflerons through Southern Insurance Underwriters, Inc., and that that coverage had expired on November 1, 1995. On December 14, 1995, Nichols provided Leslie Defleron a price quotation for a policy of homeowner's insurance offered by Lloyd's through Gulf. However, that price quotation was for a type of policy, designated `HO8' by Gulf and Lloyd's, that was not to be issued with respect to homes more than 50 years old.
 "On December 15, 1995, Nichols completed, and Leslie Defleron signed, an application form (drafted by Gulf) for *Page 560 
 Lloyd's HO8 homeowner's insurance, listing `Greg L. Defleron' as the applicant; listing `260 Dexter Avenue, Mobile, Alabama' as the mailing and dwelling address; and identifying the mortgagee of the property as `Fleet Finance Inc.' at `P.O. Box 6016, Springfield, Ohio.' The application indicated that the property for which coverage was sought was constructed in `1906 1929' and that a $277 advance premium had been accepted by Badger-Stonewall. Gulf received the application on December 18, 1995, and initially issued a certificate of insurance for policy number HOL 00983, with a coverage term of December 15, 1995, to December 15, 1996. However, a Gulf supervisor detected that the Deflerons' home did not meet the underwriting guidelines for issuance of an HO8 homeowner's policy, and directed that the policy be canceled.
 "Gulf prepared a notice of cancellation, dated January 3, 1996, indicating that policy number HOL 00983 would be canceled as of 12:01 A.M. on January 15, 1996. The record contains a copy of this notice of cancellation, which bears a signed certification indicating that exact copies of the notice were mailed to the insured and the lienholder; the notice lists the address of `Greg L. Defleron' as `260 Dexter Avenue, Mobile' and Fleet Finance's address as `P.O. Box 6016, Springfield, OH.' The record also contains a separate signed certification from a postal employee indicating that the cancellation notices addressed to `Greg L. Defleron' and Fleet Finance were delivered by Gulf to a post office on January 3, 1996. However, Leslie Defleron testified at her deposition that she did not receive this notice, and a Fleet Finance employee based in that company's Atlanta office testified at her deposition that there was no record in its files of its having received the cancellation notice. Gregory Defleron testified at his deposition that he could not recall having received a cancellation notice from Gulf, but also testified that he was sure that he would have communicated with Leslie Defleron, who handled insurance matters for the two of them, had he received such a notice.
 "At his deposition, Nichols testified that on January 18, 1996, he had sent the Deflerons a personal note apologizing for his inability to obtain insurance for them. However, he also testified that he did not keep a copy of this note, and no copy of the note appears in the record; in addition, the Deflerons denied having received any such note from Nichols.
 "On April 4, 1996, a burglar took several items from the Deflerons' home, and Leslie Defleron contacted Nichols by telephone to report the loss. Nichols telephoned Gregory Defleron later that day and informed him that there was no insurance to cover the loss.
 "The Deflerons sued Nichols, Badger-Stonewall, Gulf, and Lloyd's in the Mobile County Circuit Court. Their four-count complaint asserted, among other things, that Nichols had acted on behalf of Gulf and Lloyd's, as well as the Deflerons and Badger-Stonewall, when he allegedly represented to the Deflerons that their homeowner's insurance coverage could be placed with a `better' insurance carrier, and that the Deflerons had purchased the Lloyd's policy in reliance upon Nichols's alleged representations. In addition to this misrepresentation count, the Deflerons asserted two counts alleging that the defendants had negligently or wantonly `sold, procured, and administered' the Lloyd's homeowner's policy and one count alleging that the defendants had suppressed a material *Page 561 
 fact, i.e., that the Deflerons actually had no homeowner's coverage.
 "Gulf and Lloyd's filed summary-judgment motions as to all claims asserted against them. After the Deflerons had filed responses in opposition, the trial court heard argument on the motions and entered partial summary judgments in favor of Gulf and Lloyd's. These judgments were later certified as final, pursuant to Rule 54(b), Ala.R.Civ.P.
 "The Deflerons appealed to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975."
Defleron v. Gulf Agency, Inc., 815 So.2d at 551.
The Deflerons did not cross-petition for certiorari review of that portion of the Court of Civil Appeals' opinion affirming the summary judgment in favor of Gulf and Lloyd's as to the Deflerons' other claims alleging misrepresentation and negligent or wanton sale, procurement, or administration of an insurance policy.
 II. The Proceedings Below
The trial court determined that all of the Deflerons' claims were based upon the alleged wrongdoing of Nichols, who was purportedly acting as the agent of Gulf and Lloyd's. The trial court considered Ballard v. Lee,671 So.2d 1368 (Ala. 1995), in which this Court, on similar facts, found no basis for imposing vicarious liability, and it determined thatBallard was dispositive of all of the Deflerons' claims, because, it determined, Nichols had not been acting on behalf of Lloyd's and Gulf.
In addition, the trial court buttressed its determinations by concluding that, under the principles stated in Montz v. Mead Charles,Inc., 557 So.2d 1 (Ala. 1987), and Currie v. Great Central InsuranceCo., 374 So.2d 1330 (Ala. 1979), the Deflerons had failed to present substantial evidence indicating that the defendants had not given a notice of cancellation. Presumably, this latter conclusion, as to the Deflerons' failure to prove lack of notice, defeated the Deflerons' claim that the defendants had "intentionally or wantonly suppress[ed] a material fact, i.e., that the plaintiffs had no homeowner's insurance on their home."
The Court of Civil Appeals affirmed the summary judgment to the extent it held that Gulf and Lloyd's had no vicarious liability for the actions of Nichols, but it reversed the summary judgment insofar as it related to the Deflerons' suppression claim. The Court of Civil Appeals determined that the Deflerons had presented substantial evidence of suppression, under the standard of Ballard, wherein this Court, in addition to finding no basis for imposing vicarious liability, held that, under the circumstances of that case, an insurance company could be liable for suppression where it used policy language with a meaning generally known only to those in the insurance industry. Ballard, 671 So.2d at 1375.
 III. The Standard of Review
The standard by which this Court will review a motion for summary judgment is well established:
 "The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d), Ala. Code 1975. Evidence is *Page 562 
 `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999).
 IV. The Suppression Claim Against Lloyd's
Lloyd's argues that the judgment of the Court of Civil Appeals conflicts with Baker v. State Farm General Insurance Co., 585 So.2d 804,808 (Ala. 1991). While Lloyd's argues in its petition that the Deflerons have actually pleaded a cause of action for "fraudulent deceit," based on § 6-5-104, Ala. Code 1975, and that the Court of Civil Appeals misconstrued the claim as one of fraudulent suppression, the claim against Lloyd's can be resolved by an analysis of the relationship between Lloyd's and the Deflerons. Quite simply, there was no relationship. The Deflerons never communicated with Lloyd's, and Lloyd's never had any direct contact with the Deflerons.
Unlike Ballard, this case involves no policy of insurance that contained terms of art that reasonably could be misunderstood by the insured. Nichols tried to procure insurance for the Deflerons, which was ultimately to be underwritten by a syndicate at Lloyd's. Although Gulf initially issued a certificate of insurance on behalf of Lloyd's, no policy was forthcoming, because, when the application was more closely examined, Gulf recognized that the house did not meet the specified underwriting guidelines established by Lloyd's. The Deflerons presented no evidence — and certainly not the requisite substantial evidence — indicating that Lloyd's suppressed any material fact.
It is undisputed that the underwriting guidelines were provided to Nichols and the Badger-Stonewall Agency and to Gulf. The undisputed evidence indicates that Nichols was acting as the Deflerons' agent. The only communication Lloyd's had with any party provided nothing less than full and frank disclosure. We therefore conclude that, as a matter of law, Lloyd's is not liable for fraudulent suppression. Although the trial court applied a different rationale, it reached the correct result, and the Court of Civil Appeals should have affirmed its judgment. See Exparte Ryals, 773 So.2d 1011, 1013 (Ala. 2000); Smith v. Equifax Servs.,Inc., 537 So.2d 463, 465 (Ala. 1988).
Lloyd's was entitled to the summary judgment on the fraudulent-suppression claim. The judgment of the Court of Civil Appeals is reversed insofar as it reversed the summary judgment as to that claim.
 V. The Suppression Claim Against Gulf Agency
Gulf argues in its petition for the writ of certiorari that an action alleging the wrongful cancellation of an insurance policy does not sound in tort, but in contract. The seminal Alabama case addressing this topic is Hamner v. Mutual of Omaha Insurance Co., 49 Ala. App. 214, 270 So.2d 87
(Ala.Civ.App. 1972). In Hamner, the Court of Civil Appeals distinguished between nonfeasance, which may support an action only in contract, and misfeasance, *Page 563 
which may support an action in tort. The court wrote:
 "There is little question . . . that the line of distinction between actions in tort and [actions in] contract is thin and often nebulous in many instances. The courts of this State have recognized that under certain circumstances, for the breach of a contract there may be available either an action of assumpsit or [an action] in tort. Wilkinson v. Moseley, 18 Ala. 288 [(1850)]; Mobile Life Ins. Co. v. Randall, 74 Ala. 170 [(1883)]; Vines v. Crescent Transit Co., 264 Ala. 114, 85 So.2d 436 [(1955)]; Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852 [(1966)]. The theory on which the cases have been decided is often difficult to discern, but basically [it] may be stated that if there is [a] failure or refusal to perform a promise the action is in contract; if there is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or [in] tort. In the latter instance, whether the action declared is in tort or [in] contract must be determined from the gist or gravamen of the complaint. Basically, the line of division between [an action in contract and an action in] tort in such instances is [the line between] nonfeasance and misfeasance. If there is a defective performance there is a breach of contract and [there may also be] a tort. [William L. Prosser, The Law of Torts (4th ed. 1971) p. 614).]
 "Count Two of appellant's complaint attempts to charge a tort arising from a denial of a claim under a policy of insurance. Such [a denial], if wrongful, amounts only to a breach of a promise to perform and could only be complained of in an action for breach of contract. [National] Cas. Co. v. Thompson, 38 Ala. App. 338, 84 So.2d 363 [(1955)].
 "The manner or intent of such breach does not change the form of action, nor as a general rule, add damages not ordinarily recoverable in a breach of contract action. 84 A.L.R. 1346; Western Union Tel. Co. v. Rowell, 153 Ala. 295, 45 So. 73 [(1907)]; Deavors v. Southern Exp. Co., 200 Ala. 372, 76 So. 288 [(1917)]; Sloss-Sheffield Steel Iron Co. v. Greek, 211 Ala. 95, 99 So. 791 [(1924)]; Vines v. Crescent Transit Co., 264 Ala. 114, 85 So.2d 436 [(1955)]. No cause of action in tort being available to plaintiff under the facts pleaded, the trial court did not err in sustaining [the] demurrer to Count Two."
49 Ala. App. at 218, 270 So.2d at 90-91 (emphasis added). But seeBlackburn v. Fidelity Deposit Co. of Maryland, 667 So.2d 661, 667-68
(Ala. 1995); Nat'l Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982) (stating elements of a claim alleging the tort of bad-faith failure to pay an insurance claim).
More recently, in Alfa Mutual Insurance Co. v. Northington, 604 So.2d 758
(Ala. 1992), this Court stated reasons for not recognizing a tort remedy for wrongful cancellation. Those reasons suggest an affirmance of the summary judgment for Gulf on the fraudulent-suppression claim:
 "The law in Alabama has been that the remedy for an alleged wrongful cancellation of an insurance policy is in contract, not in tort. Watkins v. Life Ins. Co. of Georgia, 456 So.2d 259 (Ala. 1984). This remedy is recognized in a majority of jurisdictions as being the only remedy available where an insurer cancels, repudiates, or terminates a contract of insurance. Watkins, supra. *Page 564 
This Court in Watkins declined to overrule this general rule in favor of a rule that there is an `implied contract of good faith and fair dealing in every insurance contract, and that this implied contract can be breached by the wrongful cancellation of an insurance policy, just as it can be by the wrongful refusal to pay a claim.' Watkins at 263. Watkins made it clear that Alabama does not recognize a tort claim for bad faith cancellation of insurance and that such an action is barred as a matter of law. See Baker v. State Farm General Ins. Co., 585 So.2d 804
(Ala. 1991).
 "This Court has twice recently upheld the decision in Watkins. See Baker v. State Farm General Ins. Co. and Raybon v. Allstate Ins. Co., 589 So.2d 710 (Ala. 1991). Justice Kennedy, writing for the Court in Baker, held that a wrongful cancellation of an insurance policy does not give rise to a bad faith cause of action, because the tort of bad faith addresses refusal to pay a claim. Justice Kennedy stated that this was the current law concerning the tort of bad faith. Justice Shores, writing for the Court in Raybon, also reaffirmed that Watkins was the current law in this area. We note that in each of those cases the trial court had entered a summary judgment in favor of the insurer.
 "After a review of the record, as well as the well-written briefs of the parties, this Court, in this case, is not inclined to overrule, or create any exception to, the rule of law set out in Watkins."
Alfa Mut. Ins. Co. v. Northington, 604 So.2d at 759-60.
In reviewing the summary judgment for Gulf, we must view the facts in a light most favorable to the Deflerons. If we accept that Gulf never mailed a notice of cancellation, a point that Gulf vehemently contests, then, at best, that fact would present a situation of nonfeasance. Accepting the Deflerons' allegations as true, we would have to conclude that the contract was never canceled, because of a failure by Gulf to give notice of cancellation. This failure would leave the Deflerons with an action in contract, not tort. The Deflerons alleged no breach of contract based upon Gulf's failure to pay their claim. The summary judgment was properly entered for Gulf on the fraudulent-suppression claim. Insofar as it reverses as to that claim, the judgment of the Court of Civil Appeals is reversed.
 VI. Conclusion
To the extent it reversed the summary judgment for Lloyd's and Gulf on the fraudulent-suppression claim, the judgment of the Court of Civil Appeals is reversed. The case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Brown, Harwood, Woodall, and Stuart, JJ., concur.
[1] Lloyd's is an insurance market, not a single insurance company. The market consists of a number of separate syndicates that underwrite risks on a shared, but competitive, basis. Business is brought to these syndicates by a worldwide network of brokers, working with Lloyd's brokers based in London.